## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL B. DAVIS,<br><br>                    Plaintiff,<br><br>        vs.<br><br>CORY ARCANGEL, and DOES 1-10,<br><br>                    Defendants. | Civil Action No.:  21-cv-03663<br><br>**COMPLAINT** |

Plaintiff, Paul B. Davis. ("Plaintiff"), by and through his attorneys, Mazzola Lindstrom LLP, as and for his Complaint against defendant, Cory Arcangel ("Defendant"), alleges as follows:

### NATURE OF THE ACTION

1.      This a civil action seeking declaratory and injunctive relief, and for an accounting and damages relating to Plaintiff's joint authorship and copyright ownership of works of fine art that Plaintiff and Defendant jointly created pursuant to the Copyright Act, 17 U.S.C. §101 *et seq.*

2.      Despite Plaintiff's and Defendant's joint authorship and copyright ownership of these works of art, Defendant has intentionally and deliberately misrepresented, passed off, caused to be credited and/or allowed to be credited the works as authored solely by Defendant. Defendant has refused Plaintiff's demands to correct the misrepresentations and to account for and distribute to Plaintiff his share of income and profits that Defendant has received by claiming sole authorship of these jointly created works.

3.      Accordingly, Plaintiff brings this action for a declaratory judgment of his joint authorship and ownership the works, for injunctive relief enjoining Defendant from falsely attributing the works solely to himself and directing Defendant to correct prior and current false

attributions of the works; and for compensation to Plaintiff of his share of the income and profits from the works.  Plaintiff also seeks a declaratory judgment of his rights to sell the works that he jointly created with Defendant, and/or to prepare new derivative works derived from the jointly authored works, subject to an obligation to account for a share of profits from such sales. Finally, Plaintiff seeks his costs and reasonable attorney's fees in connection with this action.

## PARTIES

4.      Plaintiff, Paul B. Davis, is a United States citizen residing in London, England.

5.      Defendant, Cory Arcangel, is a United States citizen residing in Brooklyn, New York, and Stavanger, Norway.

6.      The true names, identities and capacities, whether individual, associate, corporate or otherwise, of Defendants Does 1 to 10, inclusive, and each of them (the "Doe Defendants") are unknown to Plaintiff at this time, who therefore sues the Does by such fictitious names. When the true names and capacities or participation of the Doe Defendants are ascertained, Plaintiff will amend this complaint to assert their true names, identities and capacities.  Plaintiff is informed and believes and thereon alleges that each of the Doe Defendants sued herein is responsible for the wrongful acts alleged herein, and therefore liable to Plaintiff in some manner for the events and happenings alleged in this complaint.  Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, the Doe Defendants were and are doing business and/or residing in this District.

## JURISDICTION

7.      This Court has subject matter jurisdiction pursuant to 17 U.S.C. §101, *et seq*., and 28 U.S.C. §1331 (federal question jurisdiction), 1338(a) and 1338(b) and supplemental jurisdiction for the non-federal cause of action pursuant to 28 U.S.C. §1367(a).

8.     This Court has authority to order declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, because there is a live and actual controversy between Plaintiff and Defendant that includes a dispute over proper allocation of authorship, crediting and exhibition of the works of fine art in question.

9.     This Court has personal jurisdiction over Defendant based upon Defendant's continuous and systematic contacts within this District, including because Defendant resides in this District, and in connection with the copyrights and works of art that Defendant has exploited, which are at issue in this action.

## VENUE

10.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c) because Defendant resides in this District and is subject to personal jurisdiction in this District, and because a substantial amount of the events and injury occurred in this District.

## FACTS

**Plaintiff's Pioneering Artwork**

11.     Plaintiff is a visual and multimedia artist and musician.  Plaintiff's artwork uses outdated or obsolete computer technologies such as Nintendo game systems and cartridges to perform specialist interventions in the digital art medium.

12.     When Plaintiff was a student at Oberlin College in the late 1990s, Plaintiff pioneered the use of hacked Nintendo Entertainment System video game cartridges as sculptural objects, modifying the existing code to create new, alternative works from these ready-made objects, bridging the gap between computers and art.

13.      Plaintiff's more recent work has involved aestheticizing the glitches commonly encountered in digital video compression.

14.     Plaintiff earned a bachelor's degree in music, focusing on electronic and computer music, from the Oberlin Conservatory of Music in Oberlin, Ohio.  He subsequently studied studio art and technology at the School of the Art Institute of Chicago and earned his Ph.D. in fine art from Central St. Martins in London.

15.     Plaintiff has exhibited internationally, including at the Whitney Museum of Modern Art, Whitechapel Gallery, HMKV, Witte de With Centre, Akademie der Kunste Berlin, New Museum of Contemporary Art, Tate Britain, International Film Festival Rotterdam, San Francisco Museum of Modern Art, and the Sonar Festival.

16.     Plaintiff has seventeen years of experience teaching fine art in higher education in London, including at Goldsmiths University, the Royal College of Art, and Ravensbourne College of Design.

**Plaintiff's Nintendo Cartridge Work**

17.     Plaintiff first presented his reprogrammed Nintendo cartridge work publicly in the spring of 2000.  At that time, Plaintiff was, to his knowledge, the only person reprogramming video game hardware as art.

18.     Plaintiff later founded the "BEIGE" art collective, including BEIGE Records and the BEIGE Programming Ensemble, together with Defendant, Joe Beuckman, and Joseph Bonn.

19.     Plaintiff and BEIGE then created BEIGE's first Nintendo artworks, and developed Plaintiff's hacking into a distinct body of work that has been shown internationally.

**Plaintiff And Defendant Created the Joint Works**

20.     In 2000, shortly after Plaintiff's Nintendo-based work was first publicly presented, Defendant asked Plaintiff to work together on future cartridge artworks.   Plaintiff and

Defendant had previously collaborated on various projects and had been roommates at Oberlin College.

21.     During the late 1990s and early 2000s, Plaintiff and Defendant collaborated on and jointly authored several works, including, among others, "*Fat Bits,* "*Landscape Study*," "*Super Mario Clouds*," "*Rudy's Cake Walk*," "*Naptime*," and "*Totally Fucked."*

22.     *Fat Bits* was Plaintiff's and Defendant's initial collaboration.  It originated from and incorporated Plaintiff's manipulation of software from a Nintendo video game cartridge. Plaintiff modified computer code and focused on the audio portion for this work.

23.     Plaintiff and Defendant created *Landscape Study* as partners on a grant awarded by the New York State Council on the Arts.

24.     *Super Mario Clouds* also originated from and incorporated Plaintiff's Nintendo software manipulation techniques.   Plaintiff first discussed with Defendant collaborating on *Super Mario Clouds* in April 2001.   *Super Mario Clouds* incorporated wholesale the code created and used for *Landscape Study*, Plaintiff's and Defendant's earlier jointly created work.

25.     *Rudy's Cake Walk* featured music that Plaintiff and Defendant co-created with a music band they had formed called 8-Bit Construction Set.  Plaintiff played a significant role throughout the creation of this work in collaboration with Defendant.  Plaintiff proposed the title "*Rudy's Cakewalk*" for this work.

26.     Plaintiff and Defendant created *Naptime* in 2003.  Plaintiff developed the audio and contributed to the code for the work.

27.     *Totally Fucked* similarly relied upon Plaintiff's manipulation and modification of Nintendo video game software and code.

28.     Plaintiff and Defendant agreed to joint authorship for these and other works they jointly created (collectively, the "Joint Works").  In creating the Joint Works, and for each of them, Plaintiff and Defendant intended that their contributions be merged into inseparable or interdependent parts of a unitary whole.

29.     Plaintiff and Defendant jointly authored other Joint Works, in addition to the above works, both within and outside of BEIGE.

30.     Plaintiff's and Defendant's joint creative process for the Joint Works are evidenced by, among other things, emails, session records, and master files located in Plaintiff's archive.

**Plaintiff And Defendant Agreed To Joint Authorship For Their Joint Works**

31.     Plaintiff and Defendant agreed to reflect the joint authorship of their Joint Works by crediting them to "Paul Davis and Cory Arcangel," and/or "BEIGE."

32.     For example, when *Landscape Study* was exhibited at Bitforms Gallery in 2002, the work was credited to Plaintiff and Defendant together, and when *Landscape Study* was exhibited at the Institute of Contemporary Arts in London in 2003, the installation was credited to BEIGE.

33.     Similarly, when *Super Mario Clouds* appeared on the front page of the New York Times arts section on January 19, 2003, the work was credited to BEIGE.

34.     When *Rudy's Cake Walk* appeared in the 2004 Whitney Biennial catalogue, the work was credited to 8-Bit Construction Set (the band Plaintiff and Defendant formed) and to Beige Records, a record label that Plaintiff formed which ultimately led to the BEIGIE art collective.

35.     When *Naptime* was exhibited at the 2004 Whitney Biennial, the work was credited as a collaboration of Plaintiff and Defendant.

36.     Plaintiff's and Defendant's other Joint Works were similarly credited to and designated as jointly authored by Plaintiff and Defendant.

**Defendant Attributes The Joint Works Solely To Himself**

37.     However, at various times subsequent to Plaintiff's and Defendant's agreement regarding the crediting of the authorship of the Joint Works to both Plaintiff and Defendant, Defendant began presenting himself in interviews, articles and to the public more generally as the sole author and copyright owner of the Joint Works.

38.     Moreover, after Plaintiff's and Defendant's above and other Joint Works were first created and displayed, Defendant caused and/or allowed the attribution to Plaintiff and/or BEIGE for the Joint Works to be removed and eliminated.

39.     Due to Defendant's acts, the Joint Works are now attributed to and designated as solely authored by Defendant.

40.     For example, after the 2004 Whitney Biennial selected Defendant to participate, Defendant unilaterally changed the manner in which *Super Mario Clouds* was credited.  Instead of crediting the work to Plaintiff and Defendant, Defendant had the 2004 Whitney Biennial catalogue list *Super Mario Clouds* as authored by "Cory Arcangel/BEIGE."   Moreover, at some later date the attribution to BEIGE was completely removed, so that the Whitney Museum's webpage listing for *Super Mario Clouds* now identifies Defendant as the sole author of *Super Mario Clouds*, and states that rights and reproductions to the Joint Work are credited to "©Cory Arcangel" and "Courtesy of the artist."

41.     Similarly, the Whitney Museum's webpage listing for *Rudy's Cake Walk* now credits Defendant alone as the author.

42.     *Landscape* Study is now listed on the Bitforms website as solely authored by Defendant.

43.     *Naptime* is currently listed for sale by Art Bartschi and Cie as solely authored by Defendant.

44.     *Totally Fucked,* which was shown at Lisson's Cork Street gallery from November to December 2020, is described on Lisson's website as created by "Cory Arcangel," without any recognition of Plaintiff's joint authorship.

45.     These credits and designations of the Joint Works as solely authored by Defendant eliminate Plaintiff's contributions to and joint authorship of the Joint Works, and they are therefore unlawful misrepresentations.

**Defendant Has Unilaterally Exploited, Sold, And Created Editions Of Various Joint Works For Sale**

46.     In the time since the Joint Works were originally created by Plaintiff and Defendant as joint authors and co-owners of the copyrights in those Works, Defendant has unilaterally sold certain of the Joint Works, without paying or accounting to Plaintiff for any of the monies and other financial benefits from the sale, use or other exploitation of the Joint Works.

47.     In the time since the Joint Works were originally created by Plaintiff and Defendant as joint authors and co-owners of the copyrights in those Works, Defendant has created editions of certain of the Joint Works, and has offered those Works for sale and sold those Works, without paying or accounting to Plaintiff for any of the monies and other financial benefits from the sale, use or other exploitation of the Joint Works.

8

48.     In late 2020 or early 2021, Plaintiff learned that Defendant had created and sold four editions of *Super Mario Clouds*.

49.     Upon information and belief, at least one edition of *Super Mario Clouds* has been resold on the secondary market, for which Defendant received a resale royalty.

50.     Similarly, in 2018 Plaintiff learned that an edition of *Naptime* was being offered for sale on the Bartschi and Cie website, and recently learned that the work was in fact sold by Bartschi and Cie.

51.     *Totally Fucked* likewise has an edition of five.  Upon information and belief, one of the editions was sold by Greene Naftali in 2019, and another of the editions was offered for sale by Lisson Gallery from November to December 2020.

52.     Defendant sold at least one edition of each of *Super Mario Clouds* and *Rudy's Cake Walk,* to the Whitney Museum.

53.     Additionally, Plaintiff has learned that Defendant has also unilaterally sold other works attributed to "BEIGE," or to "Cory Arcangel/BEIGE."

54.     Defendant has not paid or accounted to Plaintiff for any of the monies and other financial benefits from the sale, use or other exploitation of the above-noted Joint Works.

55.     Upon information and belief, Defendant has exploited, sold, and/or created editions of various other Joint Works, without Plaintiff's knowledge or consent, and without paying or accounting to Plaintiff for any of the monies and other financial benefits from the sale, use or other exploitation of the Joint Works.

## FIRST CAUSE OF ACTION

### (Declaratory Judgment)

56.     Plaintiff repeats and realleges each of the allegations set forth in the paragraphs above as though fully set forth herein.

57.     Plaintiff and Defendant co-created and jointly authored original artistic works between the late 1990s and early 200s, including without limitation, "*Fat Bits,* "*Landscape Study,*" "*Super Mario Clouds,*" "*Rudy's Cake Walk,*" "*Naptime,*" and "*Totally Fucked,*" referred to above as "Joint Works."

58.     Plaintiff's authorship included conceiving and executing critical aspects of each of the Joint Works.

59.     Plaintiff's contributions to the Joint Works were independently copyrightable and represented original artistic expression.

60.     Plaintiff and Defendant intended their contributions to the Joint Works to be merged into inseparable and interdependent parts of a unitary whole.

61.     Plaintiff's and Defendant's works constitute joint works under the Copyright Act, 17 U.S.C. §101 *et seq.*

62.     The Joint Works constitute works of visual art under 17 U.S.C. §101 and 17 U.S.C. §106A.

63.     The Joint Works are original works subject to the rights and protections under the Copyright Act, 17, U.S.C. §101 *et seq.*

64.     Plaintiff is an author of each of the Joint Works.

65.     Plaintiff Davis is entitled to claim authorship of the Joint Works under 17 U.S.C. §106A(a)(1)(A).

66.     Plaintiff was never an employee of Defendant.

67.     Plaintiff never agreed in a signed writing that the Joint Works should be considered works made for hire, and never assigned or transferred any rights in and to the Joint Works or the copyrights in the Joint Works.

68.     Plaintiff is entitled to an equal undivided ownership interest in each of the Joint Works, including in the copyrights in and to each of the Joint Works.

69.     Plaintiff and Defendant agreed to specific conventions for identifying their joint authorship of the Joint Works.

70.     Plaintiff never transferred or waived his right to claim authorship of the Joint Works.

71.     Defendant has repudiated Plaintiff's co-ownership and co-authorship of the Joint Works, including without limitation, *Super Mario Clouds, Rudy's Cake Walk, Landscape Study, Naptime, and Totally Fucked*, by presenting himself in interviews, articles and the public generally as the sole author of the Joint Works and/or causing and/or allowing Plaintiff's authorship credit to be removed from the Joint Works, and instead presenting, causing and/or allowing the Joint Works to be presented, exhibited and/or sold  as works authored and owned solely by Defendant.

72.     By virtue of the foregoing, an actual and justiciable controversy exists between Plaintiff and Defendant concerning Plaintiff's status as a co-author and co-owner of the Joint Works.

73.     Plaintiff is entitled to a declaratory judgment by this Court adjudging and declaring that (a) Plaintiff is the co-author and co-owner of each of the Joint Works and that Plaintiff owns an equal undivided interest in each of the Joint Works; (b) Plaintiff is entitled to

receive from Defendant income and profits derived and/or received by Defendant through Defendant's claims of sole authorship of the Joint Works; (c) Plaintiff is entitled to sell Joint Works and/or to prepare new derivative works derived from the Joint Works, subject to an obligation to account for a share of profits from such sales.

## SECOND CAUSE OF ACTION

### (Injunctive Relief Under the Visual Artists Rights Act, 17 U.S.C. §106A)

74.     Plaintiff repeats and realleges each of the allegations set forth in the paragraphs above as though fully set forth herein.

75.     The Joint Works are works of visual art under 17 U.S.C. §106A.

76.     By virtue of the foregoing, Plaintiff is entitled to preliminary and permanent injunctive relief (a) restraining and enjoining Defendant from denying Plaintiff's authorship of each of the Joint Works or claiming an interest inconsistent with Plaintiff's right to claim authorship of each of the Joint Works; and (b) directing Defendant to correct and/or cause to be corrected any misstatements or misrepresentations by Defendant regarding Plaintiff's co-authorship and joint authorship of the Joint Works, including but not limited to, that a Joint Work was or is solely authored by Defendant and/or any credit, designation, listing or other reference to any Joint Work that fails to designate Plaintiff as joint author of such Joint Work.

## THIRD CAUSE OF ACTION

### (Accounting, Imposition of Constructive Trust and Payment To Plaintiff)

77.     Plaintiff repeats and realleges each of the allegations set forth in the paragraphs above as though fully set forth herein.

78.     Upon information and belief, Defendant has and is continuing to receive monies and other financial benefits from the sale, use or other exploitation of the Joint Works.

79.    Plaintiff is entitled to an accounting of all monies and other financial benefits received or derived by Defendant from the sale, use or other exploitation of the Joint Works.

80.    To the extent that Defendant has received or will receive any receive monies and other financial benefits as a result of the sale, use or other exploitation of any of the Joint Works, Defendant holds those revenues in trust for Plaintiff, pending an accounting and payment to Plaintiff in an amount reflecting and derived from Plaintiff's equal undivided interest in such Joint Works.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

(a)    On Plaintiff's First Cause of Action, a declaratory judgment that:

1.    Plaintiff is the co-author and co-owner of each of the Joint Works;

2.    Plaintiff owns an equal and undivided interest with Defendant in each of Joint Works, including in the copyrights in and to each of the Joint Works.

3.    Plaintiff is entitled to receive from Defendant income and profits derived and/or received by Defendant through Defendant's claims of sole authorship of the Joint Works; and

4.    Plaintiff is entitled to sell Joint Works and/or to prepare new derivative works derived from the Joint Works, subject to an obligation to account for a share of profits from such sales.

(b)    On Plaintiff's Second Cause of Action:

    1.    Preliminarily and permanently restraining and enjoining Defendant from denying Plaintiff's authorship of the works Plaintiff co-authored with Defendant;

    2.    Preliminarily and permanently restraining and enjoining Defendant from claiming an interest inconsistent with Plaintiff's right to claim of authorship of the works;

    3.    Preliminarily and permanently restraining and enjoining Defendant, and Defendant's officers, employees, agents, servants, galleries, attorneys, and representatives, and all other persons, firms or corporations in active concert or participation with them, from using, marketing, or selling as solely Defendant's own work, all works, artworks, products and/or services that were created jointly by Plaintiff and Defendant;

    4.    Directing Defendant to provide corrective or remedial notice to any persons or entities to whom Defendant has denied Plaintiff's authorship of Joint Works, or to whom Defendant has claimed an interest inconsistent with Plaintiff's right of authorship, including any claims by Defendant that Defendant solely authored such Joint Works;

    5.    Directing Defendant to inform all third-parties holding Joint Works, but credited only to Defendant, that Plaintiff is a joint author of the Joint Works and to instruct such third parties to correct the attribution of authorship of such works to "Cory Arcangel and Paul Davis" or "Paul Davis and Cory Arcangel;" and

6. Directing Defendant to file with this Court, within thirty days after entry of any injunction and/or judgment in this case, a written statement under oath that sets forth the manner by which Defendant has complied with the injunction.

(c) On Plaintiff's Third Cause of Action:

1. Directing Defendant to account to Plaintiff for all income, profits and other benefits that Defendant received or derived from the sale, use, or other exploitation of the Joint Works;

2. Adjudging and declaring that Defendant holds in trust, as constructive trustee for the benefit of Plaintiff, all income, profits and other benefits that Defendant received or derived from the sale, use, or other exploitation of the Joint Works; and

3. Awarding Plaintiff damages from Defendant in an amount to be determined at trial.

(d) Awarding Plaintiff his full costs and reasonable attorney's fees incurred in connection with this action.

(e) Such other and additional relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury of all issues so triable.

Dated:  June 29, 2021

        **MAZZOLA LINDSTROM LLP**

By: *Wendy J. Lindstrom*
      Wendy J. Lindstrom
      Stephen L. Brodsky
1350 Avenue of the Americas, 2nd Floor
New York New York 10019
P:  646.216.8300
wendy@mazzolalindstrom.com
stephen@mazzolalindstrom.com

Laura D. Castner
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA  90067
P:  310.694.8585
laura@mazzolalindstrom.com

*Attorneys for Plaintiff Paul B. Davis*

16